# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| PMT PARTNERS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>COVIDIEN AG,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13CV377DAK<br><br>Judge Dale A. Kimball |

    This matter is before the court on Defendant Covidien AG's Motion for Judgment On the Pleadings Or, In the Alternative, For Transfer, Covidien's Motion to Substitute Parties, and Plaintiff PMT Partners, LLC's Motion to Amend Complaint. On February 5, 2014, the court held a hearing on the motions. At the hearing, Plaintiff was represented by Timothy K. Conde and Landon A. Allred, and Defendant was represented by Evan Z. Reid and Ryan B. Bell. The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

    This case is a contract dispute between PMT Partners, LLC, a Utah company that designs, manufactures, and markets medical devices, and Covidien AG, a Swiss health care products producer. In 2007, PMT and Covidien exchanged information about PMT's PowrSyringe, PowrSyringe Monitor, Slip Ring Control Syringe, Double Barrel Push-Push

Injector, and certain accessories and improvements to these products (collectively, the "Products"). Covidien then began negotiating with PMT to buy certain PMT assets through an Asset Purchase Agreement (the "APA").

In January 2008, PMT and Covidien signed a letter of intent for Covidien to acquire PMT's assets, including the Products, and to advance formal, exclusive due diligence. As part of the due diligence process, PMT granted Covidien open and exclusive access to PMT's engineering, manufacturing, and design samples, and other technical information relating to the Products.

In late March 2008, Covidien concluded its due diligence process after having two months to access the Products and the ability to conduct its own testing and evaluation. On March 27, 2008, Covidien wrote to PMT reconfirming its intent to purchase PMT's assets.

In April 2008, the parties met to finalize the terms of the APA. Among other provisions, the parties agreed that the asset acquisition would include three payments to PMT: (1) an up-front payment from Covidien to PMT; (2) a one-time payment from Covidien to PMT if a patent issued within three years; and (3) a 4% royalty payment to PMT on sales of the purchased assets for ten years from the date of the First Commercial Sale if the patent did not issue, and a 6% royalty on sales for fifteen years from the date of the First Commercial Sale if the patent issued. The parties further agreed that during the second full year after the First Commercial Sale, PMT would be paid a minimum annual royalty of $300,000, regardless of the total net sales. The "First Commercial Sale" is defined in the APA as "the first arm's length sale of a Product or an Affiliate or assignee of Purchaser to a third party for use in human patients."

PMT asserts that to address its concern that Covidien would cease developing or

marketing the Products, also known as "shelving" a product, the parties added Section 2.4(d) of the APA. Section 2.4(d), which ultimately proved to be the basis of the dispute between the parties, provides: "Notwithstanding anything to the contrary herein, Purchaser may elect in its discretion to discontinue marketing and sales of the [sic] all of the Products at any time. In the event that Purchaser so elects, Purchaser shall either: (I) promptly re-convey or cause to be re-conveyed to Seller all of the Purchased Assets and Purchaser shall thereafter have no further obligation to pay any Royalty hereunder (including the Minimum Royalty); or (ii) continue making Minimum Royalty payments as required hereunder."

On May 14, 2008, the parties signed the APA and Covidien paid PMT the initial payment. Pursuant to the APA, PMT transferred certain assets to Covidien. Among the assets PMT transferred were at least twenty-five plastic injection molds, issued and pending patents, brochures, website domain names, customer and potential customer lists, and other good will and intangible assets. Covidien requested and received PMT's marketing and sales documents and took over management of a website to continue promoting the Products. Covidien collected customer leads from the website.

Under the APA, PMT assigned its interest in certain intellectual property, including pending patent applications. In January 2011, the USPTO issued an office action for one of the pending patent applications, separating it into two patent applications. Covidien decided to pursue one of the products but abandoned the other.

On September 11, 2009, Covidien notified PMT that it was discontinuing marketing and sales of the Products. A few days later, Covidien advised PMT that Covidien had destroyed all of the molds PMT developed.

3

On September 28, 2009, PMT invoked Section 2.4(d) of the APA and demanded that Covidien return all the assets or begin paying the Minimum Royalty as defined in the APA. Covidien rejected PMT's demand and subsequent demands. PMT asserts that Covidien's failure to meet its obligations under the APA has caused and is causing PMT ongoing financial damages, including lost royalty payments, reduced market time, lost market share, lost brand recognition, reputation, and lost customer loyalty.

**DISCUSSION**

Covidien moves for judgment on the pleadings, asserting that PMT cannot maintain a breach of contract claim under the plain language of the APA or a claim for breach of the implied covenant of good faith and fair dealing. In the alternative, Covidien asks the court to transfer this action to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404. Covidien has also moved to substitute Mallinckrodt LLC for Covidien as the defendant in this action because Covidien assigned all its interests in the APA to Mallinckrodt on June 19, 2013. PMT opposed the motion to substitute party and further responded by filing a motion to amend to add Mallinckrodt as an additional defendant.

**Motion for Judgment on the Pleadings Or, In the Alternative, For Transfer**

**A. Motion for Judgment on the Pleadings**

Covidien seeks judgment on the pleadings, arguing that there is no breach under the unambiguous language of the APA and PMT's breach of the implied covenant of good faith and fair dealing claim is contrary to Missouri law. The parties agree that the APA is governed by Missouri law.

4

**1. Breach of the APA**

PMT's Complaint alleges that Covidien notified PMT that it was discontinuing marketing and sales support for the Products, that Covidien abandoned certain pending patents, that Covidien had destroyed all the molds, and Covidien refused to pay the Minimum Royalty under Section 2.4(d) of the APA. Covidien, however, argues that Section 2.4(d) does not entitle PMT to a return of the assets Covidien acquired under the APA or payment of the Minimum Royalty because when Section 2.4(d) is read in the context of the entire APA and specifically in connection with Section 2.4(a), Covidien had no obligation to return assets or pay a Minimum Royalty under Section 2.4(d) until a First Commercial Sale occurred.

Section 2.4 of the APA is entitled Royalty Payments. Section 2.4(a) provides:

> Commencing upon the First Commercial Sale (as defined below) of the Product and for a period of ten (10) years thereafter, Purchaser shall pay to PMTI a profit-sharing royalty (the "Royalty") of four percent (4%) of "Net Sales" . . . in accordance with the payment terms set forth in subparagraph © below. To the extent that either Patent Claim described in Section 2.3 above issues, then the Royalty rate shall thereafter increase to six percent (6%) of Net Sales . . . and the term of such Royalty payments shall be extended five (5) additional years for a total of fifteen(15) years after the First Commercial Sale. Effective during the second full year after the First Commercial Sale (as defined below) of the Product and during each one (1) year period thereafter for the term of the royalty obligation, the minimum annual Royalty shall be Three Hundred Thousand and 00/100 Dollars (U.S. $300,000.00) (the "Minimum Annual Royalty"), regardless of the total Net Sales occurring during such one (1) year period.

Section 2.4(a) defines the term "First Commercial Sale" to mean "the first arm's length sale of a

5

Product or an Affiliate or assignee of Purchaser to a third party for use in human patients."

Section 2.4(d) then provides:

> Notwithstanding anything to the contrary herein, Purchaser may elect in its discretion to discontinue marketing and sales of the [sic] all of the Products at any time. In the event that Purchaser so elects, Purchaser shall then either: (I) promptly re-convey or cause to be re-conveyed to Seller all of the Purchased Assets, and Purchaser shall thereafter have no further obligation to pay any Royalty hereunder (including the Minimum Royalty); or (ii) continue making Minimum Royalty payments as required hereunder.

Covidien claims that it if Section 2.4(d) is to be read consistently with Section 2.4(a), royalty payments under the APA can only occur after the First Commercial Sale. It is undisputed that a First Commercial Sale did not occur. Therefore, Covidien argues that because the Minimum Royalty payment referenced in Subsection 2.4(d) can only occur after the First Commercial Sale, none of the requirements of Subsection 2.4(d)–return of the property or payment of the Minimum Royalty payments–apply until after the First Commercial Sale.

In contrast, PMT argues that Covidien's reading of Section 2.4(d) requires the court to rewrite the contract because it ignores the introductory language "notwithstanding anything to the contrary herein," and replaces the phrase "at any time" with "after the First Commercial Sale." PMT asserts that the court should reject Covidien's strained interpretation of the APA.

In construing a contract, the court must give each term its plain and ordinary meaning. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003). Section 2.4(d) plainly states that Covidien's obligations arise if Covidien elects to discontinue

6

marketing and sales "at any time"–not only after the First Commercial Sale. If the parties wanted the obligations to pertain to the time period after the First Commercial Sale, they easily could have stated such.

In addition, while Covidien asks the court to use conditions contained in Section 2.4(a) of the APA to construe Section 2.4(d), Section 2.4(d) does not refer to Section 2.4(a). Section 2.4(d) refers to Minimum Royalty, a term defined in Section 2.4(a), but there is no other language indicating that any of the conditions of Section 2.4(a) apply to the requirements of Section 2.4(d). Section 2.4(a) defines "Minimum Annual Royalty" to be $300,000. Other than using the term to indicate the amount for the payment requirement, there is no indication in Section 2.4(d) that any of the conditions contained in another section–a section dealing with when royalty payments will begin and how long they will last–are to apply to impose additional conditions to the requirements in Section 2.4(d). Section 2.4(a) states that the Minimum Annual Royalty does not come due until the "second full year after the First Commercial Sale . . . of the Product." However, Section 2.4(d) states that Covidien can decide to discontinue marketing and sales "at any time." Section 2.4(d) then proceeds to list the requirements should Covidien elect to discontinue marketing and sales. The time element in Section 2.4(a) is not consistent with Section 2.4(d) and there is no language in Section 2.4(d) to indicate that such a time element is to be read into Section 2.4(d). In Section 2.4(d), the APA plainly states that Covidien's obligations are triggered if it discontinues the marketing and sales "at any time," there is no mention of "after the First Commercial Sale." Covidien's interpretation would read out the plain language "at any time" and replace them with inconsistent language from an entirely different section.

Covidien's interpretation essentially creates a condition precedent in Section

7

2.4(d). "Missouri law clearly does not favor conditions precedent." *James E. Brady & Co., Inc. v. Eno*, 992 F.2d 864, 869 (8th Cir. 1993). "Courts should not construe contract provisions to be conditions precedent unless required to do so by plain, unambiguous language or by necessary implication." *BJS Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 913 (8th Cir. 2007).

Covidien further contends that the use of the words "further" and "continue" in Section 2.4(d) contemplate that Subsection 2.4(d) would not be applicable unless the essential condition of Subsection 2.4(a) was met–in other word, the First Commercial Sale had occurred and royalty payments were already being made. Section 2.4(d) refers to an election: either Covidien can return the transferred assets and have no *further* obligation to pay any Royalty hereunder (including the Minimum Royalty); or Covidien can *continue* making the Minimum Royalty Payment. Although Section 2.4(d) uses the words "further" and "continue," it does not clearly indicate that the parties intended to incorporate an unstated and un-referenced condition precedent from Section 2.4(a).

Section 2.4(a) clearly contemplates that a First Commercial Sale will occur and assumes that royalties will be paid under the APA. The Section does not state that royalties will be due if Covidien has a First Commercial Sale, but instead states only when–"commencing upon the First Commercial Sale." In contrast, when describing an event about which the parties were uncertain, the parties used conditional language. In the same provision, the parties agreed that "To the extent that either Patent Claim . . . issues, then . . . ." Given that the parties clearly anticipated that royalties would be paid under the APA, it is not surprising that the parties used the terms "continue" and "further" in reference to royalty payments in Section 2.4(d). Section 2.4(d) clearly states that it applies "at any time" and the use of the terms "further" and "continue"

do not make the phrase "at any time" ambiguous.

Covidien also argues that the use of the conjunctive "marketing and sales" in Section 2.4(d) supports its interpretation. Subsection 2.4 states that Covidien may "discontinue marketing and sales" of the Products at any time. Covidien claims that Section 2.4(d) only applies if Covidien discontinues both marketing and sales and, thus, if sales had not begun to happen, Covidien could not discontinue them or be subject to Section 2.4(d)'s requirements. However, Section 2.4(d) does not limit the "marketing and sales" to only Covidien's "marketing and sales." It says only marketing and sales, which could apply to PMT's prior marketing and sales as well. And the court notes that, as with the terms "further" and "continue," the language of the APA appears to be written in a way that demonstrates an intent that sales will occur. However, whether or not a First Commercial Sale occurred, it is undisputed in this case that Covidien discontinued both marketing and sales. The use of the word "discontinue" does not contradict the phrase "at any time" or make it ambiguous. While all of Covidien's arguments attempt to tie Section 2.4(d) to Section 2.4(a) in order to give meaning to all the provisions of the agreement, each attempt ironically reads the phrase "at any time" entirely out of Section 2.4(d).

PMT further argues that Covidien's interpretation of the APA is contrary to the parties' intentions. The ultimate purpose of construing contracts is to give effect to the parties' intentions and construe the agreement in a way that make sense. *Portell v. Americold Logistics, LLC*, 571 F.3d 822, 824 (8th Cir. 2009). PMT contends that if Section 2.4(d) is to have any meaning, it must be construed to provide a remedy in the event that Covidien decides to shelve the products at any time. Covidien makes no attempt to explain why PMT would be entitled to relief if the products were shelved after a First Commercial Sale but would not be entitled to such

relief if the products were shelved before such time. There is no apparent reasons for such a distinction and no support for such a distinction in the plain language of the agreement.

Based on the court's interpretation of the APA, the court concludes that Covidien has not demonstrated a basis for judgment on the pleadings with respect to PMT's breach of contract claim. The APA does not unambiguously support Covidien's interpretation of Section 2.4(d). Moreover, PMT has pled the required elements of breach of contract: The APA is a valid and binding contract; Covidien is obligated under Section 2.4(d) to either reconvey assets to PMT or make the minimum royalty payments; Covidien has not taken the required actions: and PMT has been damaged. Accordingly, Covidien's motion for judgment on the pleadings on PMT's breach of contract claim is denied.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Next, the parties disagree as to whether PMT has properly stated a claim for breach of the implied covenant of good faith and fair dealing. Under Missouri law, a defendant violates the covenant of good faith and fair dealing when it "exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the plaintiff] the expected benefit of the contract." *Missouri Consol. Health Care Plan v. Community Heath Plan*, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002). "Good Faith performance . . . of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* The types of conduct found by courts to violate the implied covenant include "evasion of the spirit of the bargain, lack of diligence and slacking off, and willful rendering of imperfect performance." *Id.* However, "The covenant cannot give rise to new obligations not otherwise contained in a contract's express

terms." *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996).

PMT alleges that Covidien has breached the covenant of good faith and fair dealing by failing to undertake reasonable efforts to develop and commercialize the Products. As shown above, the parties anticipated that Covidien would consummate a "First Commercial Sale" and thereby trigger the requirement that it pay royalties to PMT. In fact, in Section 2.4(a), the only uncertainty the parties displayed regarding the payment of royalties was when they would be paid, not if they would be paid. PMT argues that Covidien's lack of diligence led to its failure to consummate a First Commercial Sale and PMT has been deprived of the benefit of its bargain in the form of royalty payments.

The court agrees with PMT that these allegations meet the requirements for stating a claim for breach of the implied covenant of good faith and fair dealing. Although Section 2.4(d) gives Covidien the discretion to discontinue marketing and sales at any time, Covidien must exercise that discretion in good faith. While Covidien may have had the discretion to discontinue its marketing and sales of the Products, it could not intentionally avoid a First Commercial Sale so as to deprive PMT of a royalty payment or return of the Product. Covidien's denial that it acted in bad faith does nothing to impact whether PMT has pled a sufficient claim for breach of the implied covenant. The court finds no basis for granting judgment on the pleadings of that claim at this early stage. Rather, the parties should proceed to discovery on the claim.

PMT has also alleged that Covidien evaded the spirit of the APA by acting so as to deprive PMT of the return of the Purchased Assets or the payment of minimum royalties in the event Covidien shelved the Products. PMT alleges that Covidien destroyed all the molds despite

the fact that a return of the molds was one possible way to comply with Section 2.4(d). In addition, Covidien has attempted to read its requirements under Section 2.4(d) so as to deprive PMT of the benefits of its bargain. To the extent that Covidien acted in accordance with a good faith interpretation of the APA, there would be no claim for breach of the implied covenant of good faith and fair dealing because such a claim would merely be duplicative of the breach of contract claim. However, at this early stage of the litigation, there is a question of fact as to whether Covidien acted in good faith when it refused to comply with the requirements of Section 2.4(d). Therefore, the court finds no basis for dismissing the claim based solely on the pleadings.

**B. Motion to Transfer**

In the event the court decides not to dismiss PMT's claims, Covidien asks the court to transfer venue to the Eastern District of Missouri. Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other forum where the action could have been brought for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a). Accordingly, in a motion to transfer, the moving party must clearly establish that: (1) the transfer will enhance the convenience of the parties and witnesses, and is in the interest of justice; and (2) the transferee court is a proper forum in which the action could have been brought originally. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 634 (1964); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991); *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). The decision of whether to transfer an action is within the discretion of the trial court. *Wm. A. Smith Contracting Co., Inc., v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972). There is no dispute in this case that the action could have been brought in the Eastern District of Missouri. Therefore, the only issue is whether the Eastern District of Missouri is a

more convenient forum for all the parties and witnesses.

The moving party in a motion to transfer has the burden of demonstrating that the existing forum is inconvenient and that the transferee forum is more convenient. *Chrysler Credit Corp.*, 928 F.2d at 1515. The United States Supreme Court has held that "[s]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 646. Furthermore, transfer is not warranted if it merely shifts the inconvenience from one party to the other. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

The Tenth Circuit has established a number of factors a district court should consider in determining whether to transfer a case to another forum, including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure the attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Texas Gulf Sulphur Co.*, 371 F.2d at 147.) The Tenth Circuit has held that "[u]nless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Wm. A. Smith Contracting*, 467 F.2d at 664.

Covidien argues that Missouri is the most convenient forum because its business activities and witnesses are in Missouri and the APA is governed by Missouri law. PMT, however, selected this forum because its principal place of business is in Utah and its main witness resides in Utah.

13

Covidien has not specifically identified its witnesses, therefore, it is difficult for the court to find that Covidien has met its burden on this factor. There is no evidence that Covidien will have witnesses who are unwilling to testify in this district or that deposition testimony will not be sufficient. There is also no evidence that relevant documents, evidence, and witnesses will not be split between Utah and Missouri. Thus Covidien has not shown that this court is more inconvenient for it than Missouri would be for PMT.

In addition, there is no evidence that litigation in this district would cause any undue burden to Covidien. Covidien chose to reach out to a Utah business to conduct business, has retained a top law firm in Utah, and has no impediment to justice in this district. Moreover, while the Eastern District of Missouri applies Missouri law more frequently than does this court, this court routinely applies the law of various states in diversity actions. Furthermore, Covidien is a large corporation with no greater concerns as to the costs of litigating in this district than PMT would have in litigating in Missouri.

Unless the balance is strongly in favor of the movant, Plaintiff's choice of forum should rarely be disturbed. *See Wm. A. Smith Contracting*, 467 F.2d at 664. Covidien has not met its burden of demonstrating that the *forum non conveniens* factors weigh strongly in its favor. Therefore, the court concludes that 28 U.S.C. § 1404(a) does not warrant transferring the action to Missouri. Accordingly, the court denies Covidien's motion to transfer.

### Covidien's Motion to Substitute Party and PMT's Motion to Amend

Covidien seeks to substitute Mallinckrodt as the defendant in this action because it assigned all of its interests, liabilities and obligations related to the APA to Mallinckrodt in an Assignment dated June 19, 2013 ("Assignment"). PMT opposes substitution and asserts that

joinder is more appropriate. Therefore, in addition to filing is memorandum in opposition to Covidien's motion, PMT concurrently filed a motion to amend its Complaint to add Mallinckrodt as an additional defendant.

The default under Rule 25 of the Federal Rules of Civil Procedure is for cases to remain pending against the original parties even if there has been a transfer of interest. Fed. R. Civ. P. 25(c)("If an interest is transferred, the action may be continued . . . against the original party."). PMT argues that, at this point of the litigation, Mallinckrodt has not satisfied its burden to prove that it should be substituted as defendant because the motion is not supported by a sworn statement, PMT has not received any substantive discovery responses that would allow it to assess the relative interest of Covidien and Mallinckrodt, the scope of the assignment between Covidien and Mallinckrodt is unclear, and a lack of information impedes the court and PMT from determining whether the relevant witnesses and documents reside at Covidien or Mallinckrodt.

PMT points out that the Assignment mentions nothing about transferring liability for pending litigation despite the fact that the Assignment was executed after this case was field. However, in the Assignment Mallinckrodt assumes all obligations and liabilities "associated and related thereto under the APA" and "agrees to be fully bound to PMTI and/or Fojtik with respect thereto." Both of PMT's claims are based on the APA and the language of the Assignment clearly protects PMT as to both claims. PMT's second cause of action for breach of the implied covenant of good faith and fair dealing is a contract claim not a tort claim. And, in any event, it is a claim regarding Covidien's "liabilities and obligations associated and related thereto under the APA," which Mallinckrodt expressly assumed under the Assignment.

Covidien responds that it has repeatedly explained to PMT's counsel that Mallinckrodt is the only proper Defendant in this case. Covidien claims that it was personnel of Mallinckrodt's predecessor, not those of Covidien, who were involved in all of the events alleged in the Complaint. Covidien also states that it was merely the designee to own the assets acquired from PMT and those assets have now been assigned to Mallinckrodt following Mallinckrodt's spin-off from Covidien.

The court agrees with Covidien that there is no requirement in the rules or case law regarding a sworn statement in support of a motion to substitute parties. The record before the court already includes the representations by counsel for Covidien and Mallinckrodt as to the history of Mallinckrodt's involvement with the APA. Counsel has also represented that all the relevant documents on the buyer's side are held by Mallinckrodt at its headquarters in St. Louis. Counsel further asserts that Mallinckrodt is a financially stable entity, fully capable of paying any and all damages that may be awarded to PMT in this action.

More importantly, the court has the Assignment in the record and the language of the assignment is plain and absolute. It has no reservations or limitations. It requires Mallinckrodt to be bound to PMT in full as to any liabilities. The breach of contract and breach of the implied covenant claims cannot be separated as to defendants as neither claim is a tort. Mallinckrodt has been assigned all liabilities and that includes any liabilities that may have arisen from purported bad faith conduct.

PMT's concerns appear to focus on bad acts that may occur in the future–a party denying liability for a certain claim or taking some action to prevent a collection of damages if damages are awarded. The court, however, cannot base its decision on concerns that a party will

take some bad faith action in the future to evade liability or payment of damages.  Mallinckrodt has accepted responsibility, liability, and all obligations that may arise in this litigation.  In the unlikely event that some bad faith action occurs, the court can address the situation before it at that time.

The court concludes that Covidien has adequately demonstrated that Mallinckrodt is the proper defendant in this action based on the terms of the Assignment.  Accordingly, the court grants Covidien's Motion to Substitute Party and denies PMT's Motion to Amend Complaint.

## CONCLUSION

For the reasons stated above, Defendant Covidien's Motion for Judgment on the Pleadings is DENIED, Covidien's alternative Motion to Transfer Venue is DENIED, Covidien's Motion to Substitute Party is GRANTED, and Plaintiff PMT's Motion to Amend is DENIED.

DATED this 24th day of February, 2014.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge