Timothy K. Conde (10118)
*tkconde@stoel.com*
Landon A. Allred (12428)
*laallred@stoel.com*
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah  84111
Telephone:  (801) 328-3131
Facsimile:  (801) 578-6999

Attorneys for
PMT Partners, LLC

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PMT PARTNERS, LLC, a Utah limited liability company, as successor in interest to PINYONS MEDICAL TECHNOLOGY, INC., a Utah corporation,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>MALLINCKRODT LLC, a Delaware Limited Liability company,<br><br>　　　　Defendant. | **DECLARATION OF SHAWN P. FOJTIK IN SUPPORT OF PLAINTIFF PMT PARTNERS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CLAIM FOR BREACH OF CONTRACT (COUNT I)**<br><br>Case No. 2:13-cv-00377<br><br>Hon. Dale A. Kimball |

COUNTY OF SALT LAKE　　　　　)
　　　　　　　　　　　　　　　　　　　):ss
STATE OF UTAH　　　　　　　　　)

　　　　I, Shawn P. Fojtik , being first duly sworn, declare and state as follows:

　　　　1.　　　　I am the CEO of plaintiff PMT Partners, LLC ("PMT"), as successor in interest to

Pinyons Medical Technology, Inc., in the above-captioned matter.  I have personal knowledge of

the facts set forth below and, if called upon to testify, would affirm all the matters set forth herein.

2.      In 2005, the following medical devices were in Pinyons Medical Technology, Inc.'s ("Pinyons") product portfolio: the PowrSyringe (the "Injector"), the PowrSyringe Monitor (the "Monitor"), the Slip Ring Control Syringe (the "SRC Syringe"), the Double Barrel Push-Push Injector (the "DB Injector"), and certain accessories and improvements to these products (referred to herein as the "Products").

3.      PMT was formed as a successor to Pinyons.  PMT is a Utah limited liability company and continues to conduct business from its principal place of business in Park City, Utah.

4.      In or around September 2007, the U.S. Food and Drug Administration cleared the Injector and Monitor for marketing.  That clearance allowed PMT to conduct marketing and sales of the Monitor and Injector in the United States.  PMT promoted and marketed the Monitor and Injector with press releases that were published globally, including an article in Cath Lab Digest in September 2007.  PMT also promoted and marketed the Monitor and Injector through the website *www.powrsyringe.com*.

5.      In or about December 2007, PMT sold the first Injector units to customers for non-human applications in the laboratory.

6.      In January 2008, PMT marketed and sold the Monitor and Injector to clinicians by detailing product, performing live product demonstrations, and distributing brochures at the International Society of Endovascular Therapy in Miami, Florida.

7.      Throughout February 2008, PMT continued to sell the Injector for non-human laboratory use, and, in March 2008, received orders for over 1,000 Injector units for human use from a third party distributor.

8.      In December 2006, PMT and Mallinckrodt[1] met to discuss acquiring PMT's product portfolio.  In 2007, Mallinckrodt had access to PMT's prototypes, finished product, engineering, and other product data.

9.      Attached as Exhibit 1 is a true and correct copy of the January 2008 letter of intent between PMT and Mallinckrodt allowing Mallinckrodt to acquire PMT's assets, including the Products, and to advance formal, exclusive due diligence.

10.     As part of the due diligence process, PMT granted Mallinckrodt additional open and exclusive access to PMT's engineering, manufacturing, and design samples, and other technical information relating to the Products.

11.     Mallinckrodt had access to PMT molds without a PMT employee present at the inspections during this time.  Two months later, on March 27, 2008, Mallinckrodt wrote to PMT to outline numerous issues Mallinckrodt discovered regarding PMTs product, engineering, manufacturing and business, all the while reconfirming its intent to purchase PMT's assets.

12.     PMT and Mallinckrodt met in April 2008 to finalize the terms of the Asset Purchase Agreement (the "APA").  Among other provisions, it was agreed the asset acquisition would include three payments to PMT: (a) an "up-front" payment from Mallinckrodt to PMT; (b)

---

[1] The APA (defined herein) was executed between PMT and original defendant Covidien AG ("Covidien").  After PMT filed its lawsuit against Covidien, Covidien spun off its wholly-owned subsidiary Mallinckrodt LLC ("Mallinckrodt"), and the assets at issue in this case were allegedly transferred from Covidien to Mallinckrodt.  *See* Motion to Subst. Parties (Dkt. 31). Based on a motion filed by Mallinckrodt, the Court substituted Mallinckrodt for Covidien as defendant in this case.  *See* Order (02/24/14) (Dkt. 52).  PMT refers to Covidien and Mallinckrodt collectively herein as "Mallinckrodt."

an additional one-time payment from Mallinckrodt to PMT if United States Patent application 11/431,377 received a notice of allowance on Claim 1 or 9 from the United States Patent and Trademark Office ("USPTO") within three years of the execution date of the APA; and (c) a 4% royalty payment to PMT on sales of the purchased assets for REDACTED, if claim 1 or 9 of Patent application 11/431,377 did not issue, and a 6% royalty on sales for REDACTED, if claim 1 or 9 of Patent application 11/431,377 issued.  The Patent application issued in January 2011.

13.     Attached as Exhibit 2 is a true and correct copy of the APA dated May 5, 2008 between PMT and Mallinckrodt.

14.     On or around May 14, 2008, PMT and Mallinckrodt signed the APA and Mallinckrodt paid PMT the initial payment.

15.     Pursuant to the APA, PMT sold and transferred to Mallinckrodt, certain assets, properties, and business of PMT (the "Purchased Assets").  *See* Ex. 2, Art. 1.

16.     Among the Purchased Assets Mallinckrodt acquired were at least twenty-five plastic injection molds, issued and pending patents, brochures, website domain names (including www.powrsyringe.com), customer and potential customer lists, and other goodwill and non-tangible assets.

17.     At the time of the APA, PMT had just been awarded the 2008 Medical Device Design Award, positive data had recently been presented at a clinical meeting, and the relevant medical issue—contrast induced nephropathy—was a common topic at industry conferences.

18.     On September 11, 2009, Giovanni Venditti, Director of Business Development for Mallinckrodt, called and told me that Mallinckrodt had discontinued marketing and sales of the Products.

19.     Attached as Exhibit 3 is a true and correct copy of an email I sent to Mr. Venditti dated September 14, 2009 at 7:50 p.m. confirming that Mallinckrodt had informed PMT that it was "discontinuing development and marketing of the Pinyons products."

20.     Attached as Exhibit 4 is a true and correct copy of Mr. Venditti's email to me dated September 15, 2009 at 8:02 a.m., wherein he stated that Mallinckrodt had destroyed the molds PMT conveyed to Mallinckrodt and which PMT had developed and used to manufacture the Products.

21.     Attached as Exhibit 5 is a true and correct copy of Mr. Venditti's email to me dated September 25, 2009 at 12:45 p.m., wherein Mallinckrodt refused to give PMT access to the molds and suggested that PMT may be interested in bidding against others for the purchased assets.

22.      In 2011, Mallinckrodt abandoned the Slip Ring Control Syringe patent application (12/738,846) and the Monitors/Inflators patent application (11/923,514) it had received under the APA.

23.     In 2011, Mallinckrodt abandoned the *www.POWRSYRINGE.com* and *www.POWERSYRINGE.com* domain names it had received under the APA.

24.     Attached as Exhibit 6 is my letter dated September 28, 2009 to Mallinckrodt demanding that, pursuant to Section 2.4(d) of the APA, Mallinckrodt return all the assets subject to the APA or begin paying the Minimum Royalty as defined therein.

25.     Attached as Exhibit 7 is a letter dated October 29, 2009 from J. Wuestner of Mallinckrodt rejecting PMT's demand that Mallinckrodt return the assets or pay the Minimum Royalty.

26.     Attached as Exhibit 8 is a letter dated November 17, 2009 from Mr. Wuestner in which he again rejected PMT's demand that Mallinckrodt return the assets or pay the Minimum Royalty.

27.     Mallinckrodt never returned promptly to PMT any of the Purchased Assets, nor has Mallinckrodt paid to PMT any payments pursuant to Section 2.4(d) of the APA.

28.     Mallinckrodt's failure and refusal to meet its obligations under the APA caused and is causing PMT ongoing and substantial money damage, including, but not limited to, lost royalty payments, reduced time on the market, lost market share, lost patent protection time on the Injector, abandoned and lost patent applications on the SRC Syringe and Monitor, lost brand recognition, lost ability to sell into two or three previously cleared FDA indications, and loss to PMT's company and brand reputation and customer loyalty.  The time Mallinckrodt wasted in refusing and failing to meet its obligations under the APA caused and is causing PMT ongoing and substantial money damages due to a multi-year delay in the development life cycles of the Products and delayed technical advancements.

29.     Mallinckrodt's destruction of PMT's manufacturing molds and other Purchased Assets makes it impossible for Mallinckrodt to return the Purchased Assets to PMT.  If Mallinckrodt attempted to return what was left of the Purchased Assets, PMT would be forced to incur substantial costs to rebuild its mold portfolio, recover lost patent protection (if possible), reacquire FDA approval, and rebuild market interest in order to commercialize the Products.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  May 12, 2014

_____
Shawn P. Fojtik